UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
JUAN S. POLO,

        Plaintiff,

           12 CV 3742 (SJ) (PK)

  v.

MEMORANDUM
AND ORDER

UNITED STATES OF AMERICA, et. al,

        Defendants.
---------------------------------------------------X

A P P E A R A N C E S
LAW OFFICE OF ELLIOT H. FULD
930 Grand Concourse, Suite 1G
Bronx, NY 10451
By:    Elliot H. Fuld
*Attorney for Plaintiff*

ROBERT LLOYD CAPERS
United State Attorney
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Rachel Balaban
*Attorney for United States*

DAVID ROBERT KROMM
The Port Authority of NY & NJ
4 World Trade Center
150 Greenwich Street
New York, NY 10007
*Attorney for The Port Authority of NY & NJ*

**JOHNSON, U.S.D.J:**

The facts and circumstances surrounding this action are largely set forth in this Court's order of September 17, 2013, granting the City of New York's motion to dismiss the claims brought against it in Plaintiff's Amended Complaint. (Dkt. No. 33.) Briefly, plaintiff Juan Polo ("Polo" or "Plaintiff") arrived at John F. Kennedy airport in Queens, New York on January 6, 2012, on a flight from Santiago, Dominican Republic. United States Customs and Border Patrol ("CBP") Officer Christopher Elias ("Elias") inspected Polo's passport and observed "a few trips" to the Dominican Republic "in a short amount of time." Polo's bags were selected for inspection.

On him were eight white plastic containers (similar to that containing baby powder). The containers were commercially labeled "Frescor" and wrapped in brown tape. Each contained white powder. Plaintiff explained that it was an anti-fungal powder required to treat an affliction to the foot from which he (and/or his brother-in-law[1]) suffered. One of the bottles was field tested twice at the airport and twice the test was positive for the presence of codeine. Plaintiff was arrested.

The government declined to prosecute Polo, and he was transferred into the custody of the Port Authority of New York and New Jersey ("Port Authority") and then into the custody of the State of New York. Plaintiff was incarcerated for

---

[1] Plaintiff states in the Amended Complaint that the powder was for his own feet. However, Defendants claim that he reported that his sister asked him to bring the powder for his brother-in-law.

2

seven days during which the State of New York re-tested the powder and did not find it to contain codeine. He was then released.

Though originally named as a defendant, the City of New York challenged Plaintiff's Monell claims and those claims were dismissed by this Court on September 17, 2013.

Before the Court are Plaintiff's motion for summary judgment on his six claims, sounding in 42 U.S.C. § 1983 and New York state law. Defendants United States of America and Port Authority separately move for summary judgment.

Only two facts remotely salient to Plaintiff's position have come out of discovery. The first is that at after field testing one bottle of powder at the airport, Elias combined the powder from all eight bottles into one large evidence bag, rather than test all eight bottles individually. The second is that Port Authority Officer Nicholas Ciancarelli ("Ciancarelli") would have informed his supervisor that the evidence bag consisted of eight different bottles had Elias told him as much.

DISCUSSION

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316

F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd.,

22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

    A. <u>Plaintiff's Motion for Summary Judgment</u>

The Court begins with Plaintiff's motion. It is unaccompanied by a memorandum of law and consists only of an attorney affirmation and exhibits. Because Plaintiff did not see fit to submit a more substantive statement of his position, his contentions need not detain us long.

Plaintiff admits that agents have the right to detain prospective entrants to the United States at the border, and to search them. Indeed, that is hornbook law. <u>See</u> <u>United States v. Montoya de Hernandez</u>, 473 U.S. 531 at 537 (1985) ("Since the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country.") (quoting <u>United States v. Ramsey</u> 431 U.S. 606, 617 (1977) ("[S]earches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.")); <u>cf.</u> <u>United States v. FNU LNU</u>, 653 F.3d 144 153-154 (2d Cir. 2011) ("[C]ompulsory questioning inheres in the situation and the traveler has

voluntarily submitted to some degree of confinement and restraint by approaching the border.").

The gravamen of Plaintiff's claim is that "[t]his case is about agents and officers who either make false representations and state false, unproven and unsubstantiated facts or who are so careless in their factual statements that their conduct borders on the reckless and grossly negligent." As there is no case law or even reference to any specific enumerated cause of action found in the Amended Complaint, it is not clear whether Plaintiff seeks to apply this logic to support a claim of malicious prosecution, false imprisonment, his common law tort claim or any number of his general claims of unreasonable search and seizure. In any event, it has already been established that the search of his belongings and his subsequent detention by the United States were lawful. It is also undisputed that Port Authority Officer Ciancarelli was unaware that only one of the eight bottles of powder were tested and that had he known, he would have reported that fact to a supervisor. The implication that he acted either with malice or without probable cause in either prosecuting or detaining Plaintiff is therefore, without merit. Plaintiff's motion for summary judgment is therefore denied.

B. Federal Defendants' Motion for Summary Judgment

For much the same reasons, the Federal Defendants' motion for summary judgment must be granted. It is undisputed that CBP agents have the right to

question and detain those entering the United States from abroad, and have the right to search possessions for contraband. That is what happened. There has been no suggestion by Plaintiff that anything up to and including the field test of the first bottle was improper. Therefore, Plaintiff was properly taken into custody and only briefly detained by CBP. The Federal Defendants are dismissed.

### C. Claims against Officer Ciancarelli

At a January 15, 2014 discovery conference before then-assigned Magistrate Judge Viktor Pohorelsky, counsel for Plaintiff indicated to the Court that he would not be pursuing claims against Officer Ciancarelli, who had not been served with the Amended Complaint despite the passage of over one year. Federal Rule of Civil Procedure 4(m) requires dismissal of the action against him. See Fed. R. Civ. P. 4(m); Zankel v. United States, 921 F.2d 432, 436 (2d Cir. 1990).

### D. Claims against Port Authority

For the same reasons Plaintiff's Monell claim against the City of New York failed at the motion to dismiss stage, the claim against the Port Authority must also fail:

> "[A] plaintiff is required to plead and prove three elements [in his Monell claim]: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not

suffice to show a municipal policy." See Ricciuti v. New York City Transit Auth., 941 F.3d 119, 123 (1991). On top of that, where the custom alleged is a failure to properly train, as it is here, municipal liability is triggered only where the failure to train amounts to deliberate indifference to another's rights. See Young v. County of Fulton, 160 F.3d 899, 903-904 (2d Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 387, 388 (1989)). This is a high standard. See Walker v. City of New York, 974 F.2d 293, 297-298 (2d Cir. 1992) ("[T]he plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation . . . Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.").

(Dkt. No. 33 at 4-5.) There are no genuine issues of material facts regarding this claim. There has been no identification of any policy and there has been one incident involving the Port Authority, to wit: transferring Plaintiff from CBP custody to State law enforcement. That is simply insufficient for a Monell claim. The Port Authority's motion is therefore granted.

## CONCLUSION

For the foregoing reasons, the action is dismissed. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: August 3, 2016 _____/s_____
      Brooklyn, New York                   Sterling Johnson, Jr., U.S.D.J.